**EXHIBIT A**

State of Illinois            )
                             ) ss
County of St. Clair          )

## UNSWORN DECLARATION UNDER PENALTY OF PERJURY
## IN SUPPORT OF COMPLAINT FOR FORFEITURE

I, Bernard J. Gard, do hereby depose and declare under penalty of perjury the following:

1.      At all times relevant herein, I have been a Special Agent with the Drug Enforcement Administration.  The contents of this Declaration are based on information provided to me during the course of my investigation from participants in the criminal activity, from other witnesses, and from other law enforcement officers.

2.      On September 23, 2013, Illinois State Police Trooper Blaine McBride conducted a traffic stop on a 2013 Ford sedan rental vehicle bearing Pennsylvania registration on Westbound Interstate 64 near mile marker 45.1 in Washington County, Illinois.  The driver of the vehicle was identified as Joshua Allan BROWN; the front passenger was identified as Morgan Alexis Brown; and the rear passenger was identified as Del Valle Javier PADILLA.

3.      Trooper McBride advised BROWN that he had been stopped for speeding and asked BROWN for his driver's license.  For officer safety Trooper McBride shined his flashlight into the interior of the vehicle in order to look for weapons.  While checking the interior of the vehicle, Trooper McBride observed PADILLA's right hand and arm shaking in a very nervous manner.  While looking for his driver's license, Trooper McBride observed BROWN's hands and legs were shaking in a very nervous manner.  Morgan Brown was clutching a pillow against her chest and her arms appeared to be shaking.  While standing next to the passenger side window, Trooper McBride observed Morgan Brown looking straight ahead or straight down.  Trooper McBride felt that

Morgan Brown was trying to avoid direct eye contact with him.

4.      Due to the extreme nervous behavior exhibited by BROWN and the two passengers, Trooper McBride became concerned for his safety and believed that BROWN and the two passengers were armed.  Trooper McBride then asked BROWN what kind of guns BROWN had in the vehicle.  BROWN responded by producing a loaded and holstered 9mm Hi-Point handgun and claimed that he kept the handgun for protection.  The handgun had been next to BROWN's right leg, on the seat and next to the center console.  Trooper McBride secured the weapon and requested identification from the passengers.

5.      Trooper McBride asked BROWN who the vehicle belonged to.  BROWN stated that he had rented the vehicle.  Trooper McBride asked to see the rental contract and BROWN handed the documents to Trooper McBride.  Trooper McBride returned to his patrol vehicle and conducted driver's license, criminal, and firearm inquiries.  Trooper McBride also inspected the vehicle rental contract which stated Joshua BROWN had rented the vehicle in Georgia from Hertz Vehicle, LLC.

6.      Trooper McBride knew from training and experience that people who possess illegal drugs are sometimes armed with weapons and they frequently appear very nervous.  All three occupants appeared very nervous and BROWN had been armed with a loaded firearm.

7.      Trooper McBride re-approached the vehicle and asked BROWN to come back to the squad car and BROWN complied.  Trooper McBride asked BROWN where he was coming from and BROWN stated Georgia.  Trooper McBride then asked BROWN where they were travelling to and BROWN stated he was going to Colorado to visit his "ailing mother."  Trooper McBride asked BROWN what city they were traveling to and BROWN stated they were going to Westminster. Trooper McBride then asked BROWN if there were any other firearms or drugs in the vehicle.

2

BROWN answered no to the question, but looked at the vehicle while answering.   In Trooper McBride's experience, the behavior is indicative of a deceitful answer.

8.      Trooper McBride then asked PADILLA to exit the vehicle.   Trooper McBride asked PADILLA where they were going and PADILLA stated they were going to Colorado.   Trooper McBride asked PADILLA what they were going to do in Colorado.   PADILLA stated that he was just along for the ride.

9.      Trooper McBride then asked Morgan Brown to exit the vehicle.   Trooper McBride asked Morgan Brown where they were headed and she stated they were going to Colorado.   Trooper McBride asked Morgan Brown what they were going to do in Colorado.   Morgan Brown stated they were going to visit Joshua BROWN's family.   Trooper McBride asked who it was from Joshua BROWN's family they were going to visit.   Morgan Brown avoided the question and started talking about their trip.   Trooper McBride asked Morgan Brown where Joshua Brown's mother lives.   Morgan Brown replied "Georgia."

10.     Due to BROWN's response regarding additional firearms and drugs in the vehicle and the conflicting statements made by BROWN and the passengers, Trooper McBride requested consent to search the vehicle and its contents.   All three subjects granted consent to search the vehicle and their respective luggage.

11.     During the search Trooper McBride located a glass jar containing approximately 5.6 grams of suspected marihuana and a stack of United States currency bound in rubber bands under the front passenger seat totaling $13,690.00.   During a search of the trunk, Trooper McBride located an uncased Double Star Corporation semi-automatic rifle.   Trooper McBride also located a thirty-round magazine loaded with twenty rounds of 5.56mm ammunition near the rifle.   Trooper

McBride then located a stack of United States currency bound in rubber bands within a shoe inside a plastic bag within the trunk totaling $10,000.00.

12.     During the search, Trooper McBride twice observed Morgan Brown heaving as if she were going to vomit.  Trooper McBride was concerned that Morgan Brown may have ingested drugs or another substance; however, Morgan Brown told Trooper McBride that the behavior was involuntary and occurred when she was upset.  Later, as Trooper McBride continued to speak with Morgan Brown, she vomited.  Again Trooper McBride asked Morgan Brown if she had ingested anything and again she stated that the behavior was involuntary and occurred when she was upset.

13.     All three subjects were arrested and transported to the Washington County jail where they were interviewed by Illinois State Police Inspectors Joe Moyer and Wes Harbison.  Joshua BROWN, Morgan Brown and PADILLA all admitted they were traveling to Colorado to purchase marihuana.

14.     Morgan Brown stated that the firearms were registered to Joshua BROWN.  Morgan stated that she, Joshua BROWN and PADILLA were going to see friends and family in Colorado, specifically "Anthony."  Morgan Brown stated they were going to Colorado to see if they could purchase marihuana.  Morgan Brown added that they were going to see if they could obtain a connection in Colorado.  Morgan stated that they had planned on arriving around 11:00 a.m. in Westminster, Colorado.  Morgan stated that they choose Westminster because it is close to Denver.  Morgan stated that they had discussed going to a cannabis dispensary.  Morgan admitted that they smoked marihuana in the car during the trip.  Morgan stated that PADILLA is Joshua BROWN's friend and all three are roommates.  Morgan became very quiet and refused to answer when questioned about PADILLA.  Morgan again stated that they had planned on going to Colorado to

4

see how to obtain marihuana.   Morgan stated that Joshua BROWN used to sell marihuana approximately one year ago but she asked him to stop.   Morgan further stated that she was on probation and was not permitted to leave the state of Georgia.

15.    Joshua BROWN admitted to owning the currency located under the front passenger seat and PADILLA admitted to owning the currency located in the shoe in the trunk of the vehicle. BROWN further stated that the firearms were his and that the money which was hidden under the front seat of the car wrapped with rubber bands was his.   BROWN stated that the marihuana found in the car was not his and he did not know to whom it belonged.   Throughout the interview BROWN was adamant that the marihuana was not his and he continually came back to the topic of the marihuana and consistently stated that he did not know who it belonged to.   BROWN stated that he, Morgan Brown and PADILLA were going to Colorado to get a visitor's pass to try to purchase marihuana.   BROWN stated that they were going to meet BROWN's friend "Eric" who lives in Denver.   BROWN stated that he does not know anyone named "Anthony" in Colorado. BROWN further stated that neither he, Morgan Brown nor PADILLA know anyone else in Colorado.   BROWN stated that he has known PADILLA for a "couple of years or so."   When agents questioned BROWN about PADILLA's living arrangements, BROWN stated that they are friends not roommates.   BROWN stated that he moved out a few weeks ago and now lives with his uncle.   Soon after that statement, BROWN stated that he and PADILLA are roommates and that he "lied a second ago."   BROWN was reluctant to discuss anything concerning PADILLA.   When agents asked BROWN when he had last smoked marihuana BROWN stated "skip that question."

16.    PADILLA stated that they were planning on going to Westminster, Colorado. PADILLA stated that BROWN wanted to see his family in Colorado.   PADILLA stated that he,

BROWN and Morgan Brown planned to go to Colorado to obtain marihuana from a dispensary. PADILLA stated that BROWN and Morgan Brown asked him if he wanted to come to Colorado with them.  PADILLA explained that he has known BROWN for a long time.  Agents asked PADILLA to quantify "a long time."  PADILLA stated "just a long time."  PADILLA stated he was living with BROWN and Morgan Brown and had been for about three months.  PADILLA added that all of the money he had with him was from working and selling cars.

17.    While processing BROWN, deputies located an additional $386.00 in United States currency in BROWN's wallet and pants pocket.  This money was then added to the $13,690.00 claimed by BROWN that was located earlier under the front passenger seat of the vehicle for a total of $14,076.00.

18.    While processing PADILLA, deputies located an additional $961.00 in PADILLA's wallet and pants pocket of PADILLA.  This money was added to the $10,000.00 claimed by PADILLA that was located earlier inside a shoe located in the trunk of the vehicle for a total of $10,961.00.

19.    BROWN, Morgan Brown and PADILLA were all charged with Possession of Cannabis.  BROWN subsequently pled guilty and received 12 months conditional discharge.  The charges against Morgan Brown and PADILLA were dismissed.

20.    BROWN has a prior arrest by the Cobb County Georgia Sheriff's Department on December 15, 2006, for Purchase, Possession, Manufacture, Distribution, or Sale of Marijuana.

21.    Morgan Brown has a prior arrest by the Cobb County Georgia Sheriff's Department on March 6, 2012, for Possession of Marijuana.

22.    Javier PADILLA has a prior arrest by the Cobb County Georgia Sheriff's Department

on April 15, 2011, for Possession of Marijuana.

23.     Declarant further believes, as a result of the foregoing, that the subject-matter $14,076.00 in United States currency constitutes money furnished or intended to be furnished by a person in exchange for a controlled substance, or proceeds traceable to such an exchange, or money used to facilitate a violation of 21 U.S.C. § 801 *et seq*. and is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

24.     Declarant further believes, as a result of the foregoing, that the subject-matter $10,961.00 in United States currency constitutes money furnished or intended to be furnished by a person in exchange for a controlled substance, or proceeds traceable to such an exchange, or money used to facilitate a violation of 21 U.S.C. § 801 *et seq*. and is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

Executed on this 23rd day of May, 2014.

BERNARD J. GARD
Special Agent
Drug Enforcement Administration

7